# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| Kena Adams, James Buskirk, Kathleen Phillips, Tobiah Higgins, Eldon Smith, Sabrina Gilson, Davon Peyton, Nicholas Ramsey, Shayna Kimball<br><br>      Plaintiffs,<br><br>v.<br><br>Credit Protection Association, LP<br><br>      Defendant. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, FLORIDA CONSUMER COLLECTION PRACTICE ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Kena Adams ("Ms. Adams"), is a natural person who resided in Richardson, Texas, at all times relevant to this action.

2. Plaintiff, James Buskirk ("Mr. Buskirk"), is a natural person who resided in Cocoa, Florida, at all times relevant to this action.

3. Plaintiff, Kathleen Phillips, ("Ms. Phillips"), is a natural person who resided in Lincoln Park, Michigan, at all times relevant to this action.

4. Plaintiff, Tobiah Higgins ("Ms. Higgins"), is a natural person who resided in Baltimore, Maryland, at all times relevant to this action.

5. Plaintiff, Eldon Smith ("Mr. Smith"), is a natural person who resided in Detroit, Michigan, at all times relevant to this action.

6. Plaintiff, Sabrina Gilson ("Ms. Gilson"), is a natural person who resided in Monroe, Michigan, at all times relevant to this action.

7. Plaintiff, Davon Peyton ("Mr. Peyton"), is a natural person who resided in Washington, D.C., at all times relevant to this action.

8. Plaintiff, Nicholas Ramsey ("Mr. Ramsey"), is a natural person who resided in Farmington Hills, Michigan, at all times relevant to this action.

9. Plaintiff Shayna Kimball ("Ms. Kimball") is a natural person who resided in Saco, Maine, at all times relevant to this action.

10. Defendant, Credit Protection Association, LP (CPA), is a Texas Limited Partnership that maintained its principal place of business in Dallas, Texas at all times relevant to this action.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

12. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Mr. Buskirk's claim under the Florida Consumer Collections Practices Act ("FCCPA") because that claim shares a common nucleus of operative facts with Mr. Buskirk's claims under the FDCPA and the TCPA.  S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

13. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to one of the Plaintiffs' claims occurred in this judicial district.

14. Pursuant to 28 U.S.C. § 1391(b), venue is also proper because CPA resides and is subject to personal jurisdiction in this judicial district on the basis of its continuous activities in this district, including but not limited to: (a) CPA conducts business in this district by

seeking to collect debt from consumers who reside in this district; (b) CPA receives

compensation from creditors that reside and/or conduct business in this district; (c) CPA

has been a defendant in lawsuits filed in this district arising from CPA's debt collection

activities in this district; and (d) CPA's business practices, which are at issue in this

lawsuit, are the same practices in which CPA regularly engages with respect to consumers

that reside in this district.

## JOINDER

15.   Rule 20 of the Federal Rules of Civil Procedure provides, in part:

(a) PERSONS WHO MAY JOIN OR BE JOINED.

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

*See* Fed. R. Civ. P. 20(a).

16.   "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope

of action consistent with fairness to the parties; joinder of claims, parties and remedies is

strongly encouraged." *See United Mineworkers of Am. V. Gibbs*, 383 U.S. 715, 724, 86 S.

Ct. 1130, 1138 (1966).

17.   Rule 20 is "designed to permit the joinder of plaintiffs or defendants whenever there is a

common question of law or fact and the right to relief arises out of a single transaction or

occurrence or a series of transactions or occurrences." *Walker v. City of Houston*, 341 F.

Supp. 1124, 1132 (S.D. Tex. 1971).

18.  "A 'series of transactions or occurrences,' means some connection or logical relationship between various transactions or occurrences such as a 'nucleus of operative facts or law.'" *Breidel v. Harris Cnty. Sheriff's Ofc.*, 2014 U.S. Dist. LEXIS 108542, *9 (S.D. Tex. Aug. 6, 2014); *quoting Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993).

19.  "Rule 20 is intended to be liberally construed in order to promote trial convenience." *Breidel*, 2014 U.S. Dist. LEXIS, at *9; *citing Walker*, 341 F. Supp., at 1132.

20.  "The common question need not predominate; that's a requirement for class actions; not for permissive joinder." *See Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011); *Fidelity Nat'l Title Co. v. U.S. Small Bus. Admin.*, 2014 U.S. Dist. LEXIS 65380, *25 (E.D. Cal. May 12, 2014).

21.  Allegations of a "company-wide policy" that violates federal law have been held sufficient to establish that multiple plaintiffs' claims "arise out of the same series of transactions or occurrences." *See, e.g., Afabor v. RaceTrac Petroleum, Inc.*, 2006 U.S. Dist. LEXIS 33045, *11 (N.D. Tex. May 15, 2006); *citing King v. Ralston Purina Co.*, 97 F.R.D. 477 (W.D.N.C. 1983) ("Common sense says that claims alleged to be part of a 'pattern and practice' satisfy both the 'transaction' and the 'common question' requisites of Rule 20(a).").

22.  In the FDCPA context, allegations by multiple plaintiffs that they were subjected to the same collection practices by a single debt collector support joinder under Rule 20. *See Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 888-89 (S.D. Ohio 2003).

23.  Joinder is particularly appropriate at the pre-trial stage of litigation where "the alleged acts occurred are quite similar for each [p]laintiff with the majority of each [p]laintiff's

allegations occurring [during a limited time period]." *See Nelson v. Chertoff*, 2008 U.S.

Dist. LEXIS 82981, *16 (N.D. Ill. Sep. 10, 2008).

24.    In the TCPA context, calls received by multiple plaintiffs from the same debt collector

using an autodialer support joinder under Rule 20. *See, e.g., Blair v. CBE Group,*

*Inc.*, 2013 U.S. Dist. LEXIS 150996, *17-18 (S.D. Cal. Oct. 17, 2013); *Desai v. ADT Sec.*

*Servs., Inc.*, 2011 U.S. Dist. LEXIS 77457, *4-8 (N.D. Ill. July 18, 2011).

## ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS

25.    At all times relevant to this action, CPA collected consumer debts.

26.    CPA regularly uses instrumentalities of interstate commerce and the mails to collect

consumer debts owed or due or asserted to be owed or due another.

27.    The principal source of CPA's revenue is debt collection.

28.    CPA is a "debt collector" as defined by 15 U.S.C. §1692a(6).

29.    As described, infra, CPA contacted each Plaintiff to collect a debt that was incurred

primarily for personal, family, or household purposes.

30.    This alleged obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

31.    Each Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3).

32.    CPA uses a predictive dialer system.

33.    Before CPA began contacting each Plaintiff, it and each Plaintiff had no prior business

relationship and each Plaintiff never provided express consent to CPA to be contacted on

his/her cellular telephone.

34.    Within the past twelve (12) months, CPA called each Plaintiff on multiple occasions in

connection with the collection of a debt.

35. On several occasions, within the past forty-eight (48) months, the dates of which will be discovered through discovery, CPA willingly and knowingly used an automatic telephone dialing system (ATDS) to call Plaintiffs on his or her cellular phone multiple times in violation of the TCPA

36. Each Plaintiff, on at least one occasion, communicated his or her desire that CPA cease calling him or her.

37. Notwithstanding these communications, CPA continued to call each Plaintiff in connection with the collection of a debt.

38. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but does not do so in writing, CPA disregards that communication as if it had not been made.

39. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but does not do so in writing, CPA does not record that request in CPA's records related to the debt Defendant is seeking to collect from the consumer.

40. In this case, CPA followed the aforementioned policy and practice when each Plaintiff communicated his or her desire that CPA stop calling him or her.

41. CPA's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like each Plaintiff.

42. CPA unreasonably relied upon inaccurate information provided to CPA by one or more original creditors for whom CPA was attempting to collect a debt when CPA called certain Plaintiffs' cellular telephone.

## LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS

43. Section 1692d of the FDCPA provides, in part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. § 1692d.

44. "[W]hether the natural consequence of [a] debt collector's telephone calls is harassment [depends on]…the nature of the phone calls – their frequency and intent." *See Spencer v. Receivables Performance Mgmt.*, 2013 U.S. Dist. LEXIS 29696, *6 (S.D. Tex. Mar. 4, 2013).

45. Where a consumer has communicated his or her desire that a debt collector stop calling, and the debt collector nonetheless continues to call the consumer, the volume and pattern of the calls may evidence intent to harass in violation of Section 1692d. *See Brandt v. I.C. Syst., Inc.*, 2010 U.S. Dist. LEXIS 14588, *3-6 (M.D. Fla. Feb. 19, 2010) (once plaintiff told defendant to stop calling him, ***each subsequent phone call violated 15 U.S.C. § 1692d***); *see also Stuart v. AR Resources, Inc.*, 2011 U.S. Dist. LEXIS 27025, *7-8 (E.D. Penn. Mar. 16, 2011); *Shand-Pistilli v. Professional Account Servs, Inc.*, 2010 U.S. Dist LEXIS 75056, *10-12 (E.D. Penn July 26, 2010); *Majeski v. I.C. Sys., Inc.*, 2010 U.S. Dist. LEXIS 1830, *5-7 (N.D. Ill. Jan. 8, 2010).

46. Section 1692f of the FDCPA provides, in part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

*See* 15 U.S.C. § 1692f.

47. Where a question exists as to whether a debt collector's alleged misconduct violates Section 1692f or some other section of the FDCPA, the prudent course at the pre-trial stage

is to allow the consumer to pursue claims under both sections. *See Davis v. Diversified Consultants, Inc.*, 2014 U.S. Dist. LEXIS 87867, *25 (D. Mass. June 27, 2014); *citing Rush v. Portfolio Recovery Associates, LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013).

48.    CPA's maintenance of policies and practices, which in themselves violate the FDCPA, is further evidence of CPA's intent to harass consumers. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 2009 U.S. Dist. LEXIS 32369 (D. N.M. Mar. 16, 2009) (debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA); s*ee also Kromelbein v. Envision Payment Solutions, Inc.*, 2013 U.S. Dist. LEXIS 107762, *18 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [the FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights.").

49. The TCPA provides, in part:

> (b)  RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> > (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> >
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> > >
> > > * * *

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

50. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the person or entity subscribing to the called number at the time the telephone call is made. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *Zyboro v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014).

51.  The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

52. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...."  47 U.S.C. § 312(f).

53. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

54. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

## ADDITIONAL FACTORS SUPPORTING JOINDER

55. The witness(es) that CPA will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

56. The information that CPA will provide in response to interrogatories related to CPA's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

57. The evidence that CPA will produce in response to requests for production of documents related to CPA's policies, practices and procedures will likely be the same, or substantially similar, for each Plaintiff.

58. Joinder will allow a single trier of fact to assess the pattern and frequency of CPA's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

59. Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve each Plaintiff's fairly straightforward claim that CPA violated the FDCPA, TCPA and FCCPA.

## INDIVIDUAL COUNTS AS TO EACH PLAINTIFF

### *COUNT ONE* – Kena Adams

**Violation of the Fair Debt Collection Practices Act**

60. In early 2014, CPA began calling Ms. Adams on her cellular phone in connection with the collection of a debt.

61.   On multiple occasions, Ms. Adams communicated her desire that CPA cease calling her.

62.   Notwithstanding these communications, CPA continued to call Ms. Adams multiple times on her cellular phone in connection with the collection of a debt within the last twelve months.

63.   CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

64.   CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

65.   In this case, CPA policies and practices violated the FDCPA as to Ms. Adams.

66.   CPA caused Ms. Adams emotional distress.

67.   CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Adams in connection with the collection of the debt.

*COUNT TWO – Kena Adams*

**Violation of the Fair Debt Collection Practices Act**

68.   Ms. Adams re-alleges and incorporates by reference Paragraphs 61 through 67 above as if fully set forth herein.

69.   CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

11

*COUNT THREE – Kena Adams*

**Violation of the Telephone Communication Protection Act**

70. Ms. Adams re-alleges and incorporates by reference Paragraphs 61 through 67 above as if fully set forth herein.

71. Ms. Adams was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

72. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Adams cellular telephone using an ATDS without Ms. Adams prior express consent or after Ms. Adams had revoked such consent.

*COUNT FOUR – Kena Adams*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

73. Ms. Adams re-alleges and incorporates by reference Paragraphs 61 through 67, and Paragraph 71, above as if fully set forth herein.

74. CPA voluntarily placed telephone calls to Ms. Adams's cellular telephone using an ATDS.

*75.* CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Adams' cellular telephone using an ATDS without Ms. Adams's prior express consent.

*COUNT FIVE* – James Buskirk

**Violation of the Fair Debt Collection Practices Act**

76. In early 2014, CPA began calling Mr. Buskirk on his cellular phone in connection with the collection of a debt.

77. On multiple occasions, Mr. Buskirk communicated his desire that CPA cease calling him.

78. Notwithstanding these communications, CPA continued to call Mr. Buskirk multiple times on his cellular phone in connection with the collection of a debt within the last twelve months.

79. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

80. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

81. In this case, CPA policies and practices violated the FDCPA as to Mr. Buskirk.

82. CPA caused Mr. Buskirk emotional distress.

83. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Buskirk in connection with the collection of the debt.

## *COUNT SIX – James Buskirk*

**Violation of the Fair Debt Collection Practices Act**

84. Mr. Buskirk re-alleges and incorporates by reference Paragraphs 76 through 83 above as if fully set forth herein.

85. CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## *COUNT SEVEN – James Buskirk*

**Violation of the Florida Consumer Collection Practices Act**

86. Mr. Buskirk re-alleges and incorporates by reference Paragraphs 76 through 83 above as if fully set forth herein.

87.   CPA is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

88.   The alleged obligation CPA was seeking to collect is a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(1).

89.   Mr. Buskirk is a "consumer" as defined by the FCCPA, Fla. Stat. § 559.55(2), and is a person whom the FCCPA is intended to protect.

90.   CPA willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Mr. Burskirk with such frequency as can reasonably be expected to harass Mr. Burskirk, or engaging in other conduct which can reasonably be expected to abuse or harass Mr. Burskirk.

### *COUNT EIGHT – James Buskirk*

**Violation of the Telephone Communication Protection Act**

91.   Mr. Buskirk re-alleges and incorporates by reference Paragraphs 76 through 83 above as if fully set forth herein.

92.   Mr. Buskirk was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

93.   CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Buskirk's cellular telephone using an ATDS without Mr. Buskirk's prior express consent or after Mr. Buskirk had revoked such consent.

### *COUNT NINE – James Buskirk*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

94.   Mr. Buskirk re-alleges and incorporates by reference Paragraphs 76 through 83, and Paragraph 92, above as if fully set forth herein.

95.   CPA voluntarily placed telephone calls to Mr. Buskirk's cellular telephone using an

ATDS.

96.   CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate

occasions by each time calling Mr. Buskirk's cellular telephone using an ATDS without

Mr. Buzkirk's prior express consent.

*COUNT TEN – Kathleen Phillips*

**Violation of the Fair Debt Collection Practices Act**

97.   In early 2014, CPA began calling Ms. Phillips on her cellular phone in connection with the

collection of a debt.

98.   On multiple occasions, Ms. Phillips communicated her desire that CPA cease calling her.

99.   Notwithstanding these communications, CPA continued to call Ms. Phillips multiple times

on her cellular phone in connection with the collection of a debt within the last twelve

months.

100.   CPA's policy and practice is that when a consumer communicates his or her desire that

CPA cease calling, but the consumer does not do so in writing, CPA disregards that

communication as if it had not been made.

101.   CPA's policy and practice is that when a consumer communicates his or her desire that

CPA cease calling, but the consumer does not do so in writing, CPA does not record that

request in CPA's records related to the debt CPA is seeking to collect from the consumer.

102.   In this case, CPA policies and practices violated the FDCPA as to Ms. Phillips.

103.   CPA caused Ms. Phillips emotional distress.

104.   CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which

is to harass, oppress, or abuse Ms. Phillips in connection with the collection of the debt.

*COUNT ELEVEN – Kathleen Phillips*

**Violation of the Fair Debt Collection Practices Act**

105.   Ms. Phillips re-alleges and incorporates by reference Paragraphs 97 through 104 above as if fully set forth herein.

106.   CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

*COUNT TWELVE – Kathleen Phillips*

**Violation of the Telephone Communication Protection Act**

107.   Ms. Phillips re-alleges and incorporates by reference Paragraphs 97 through 104 above as if fully set forth herein.

108.   Ms. Phillips was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

109.   CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Phillips's cellular telephone using an ATDS without Ms. Phillips's prior express consent or after Ms. Phillips had revoked such consent.

*COUNT THIRTEEN – Kathleen Phillips*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

110.   Ms. Phillips re-alleges and incorporates by reference Paragraphs 97 through 104, and Paragraph 108, above as if fully set forth herein.

111.   CPA voluntarily placed telephone calls to Ms. Phillips's cellular telephone using an ATDS.

112. CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Phillips's cellular telephone using an ATDS without Ms. Phillips's prior express consent.

### COUNT FOURTEEN – Tobiah Higgins

**Violation of the Fair Debt Collection Practices Act**

113. In early 2014, CPA began calling Ms. Higgins on her cellular phone in connection with the collection of a debt.

114. On multiple occasions, Ms. Higgins communicated her desire that CPA cease calling her.

115. Notwithstanding these communications, CPA continued to call Ms. Higgins multiple times on her cellular phone in connection with the collection of a debt within the last twelve months.

116. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

117. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

118. In this case, CPA policies and practices violated the FDCPA as to Ms. Higgins.

119. CPA caused Ms. Higgins emotional distress.

120. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Phillips in connection with the collection of the debt.

*COUNT FIFTEEN – Tobiah Higgins*

**Violation of the Fair Debt Collection Practices Act**

121.  Ms. Higgins re-alleges and incorporates by reference Paragraphs 113 through 120 above as if fully set forth herein.

122.  CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

*COUNT SIXTEEN – Tobiah Higgins*

**Violation of the Telephone Communication Protection Act**

123.  Ms. Higgins re-alleges and incorporates by reference Paragraphs 113 through 120 above as if fully set forth herein.

124.  Ms. Higgins was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

125.  CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Higgins's cellular telephone using an ATDS without Ms. Higgins's prior express consent or after Ms. Higgins had revoked such consent.

*COUNT SEVENTEEN – Tobiah Higgins*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

126.  Ms. Higgins re-alleges and incorporates by reference Paragraphs 113 through 120, and 124, above as if fully set forth herein.

127.  CPA voluntarily placed telephone calls to Ms. Higgins's cellular telephone using an ATDS.

128.  CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate

occasions by each time calling Ms. Higgins's cellular telephone using an ATDS without

Ms. Higgins prior express consent.

### *COUNT EIGHTEEN – Eldon Smith*

**Violation of the Fair Debt Collection Practices Act**

129.  In early 2014, CPA began calling Mr. Smith on his cellular phone in connection with the

collection of a debt.

130.  On multiple occasions, Mr. Smith communicated her desire that CPA cease calling him.

131.  On December 29, 2014, CPA was provided with notification that Mr. Smith was

represented by Hyslip & Taylor, LLC LPA relating to the collection of the debt.

132.  Notwithstanding these communications, CPA continued to call Mr. Smith multiple times

on his cellular phone in connection with the collection of a debt within the last twelve

months.

133.  CPA's policy and practice is that when a consumer communicates his or her desire that

CPA cease calling, but the consumer does not do so in writing, CPA disregards that

communication as if it had not been made.

134.  CPA's policy and practice is that when a consumer communicates his or her desire that

CPA cease calling, but the consumer does not do so in writing, CPA does not record that

request in CPA's records related to the debt CPA is seeking to collect from the consumer.

135.  In this case, CPA policies and practices violated the FDCPA as to Mr. Smith.

136.  CPA caused Mr. Smith emotional distress.

137.  CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which

is to harass, oppress, or abuse Ms. Phillips in connection with the collection of the debt.

<u>*COUNT NINETEEN – Eldon Smith*</u>

**Violation of the Fair Debt Collection Practices Act**

138.  Mr. Smith re-alleges and incorporates by reference Paragraphs 129 through 137 above as if fully set forth herein.

139.  CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<u>*COUNT TWENTY – Eldon Smith*</u>

**Violation of the Fair Debt Collection Practices Act**

140.  Mr. Smith re-alleges and incorporates by reference Paragraphs 129 through 137 above as if fully set forth herein.

141.  CPA violated 15 U.S.C. § 1692c by communicating with Mr. Smith when CPA knew Mr. Smith was represented by an attorney.

<u>*COUNT TWENTY-ONE – Eldon Smith*</u>

**Violation of the Telephone Communication Protection Act**

142.  Mr. Smith re-alleges and incorporates by reference Paragraphs 128 through 137 above as if fully set forth herein.

143.  Mr. Smith was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

144.  CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Smith's cellular telephone using an ATDS without Mr. Smith's prior express consent or after Mr. Smith had revoked such consent.

*COUNT TWENTY-TWO – Eldon Smith*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

145.   Mr. Smith re-alleges and incorporates by reference Paragraphs 124 through 137, and Paragraph 143, above as if fully set forth herein.

146.   CPA voluntarily placed telephone calls to Mr. Smith's cellular telephone using an ATDS.

147.   CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Smith's cellular telephone using an ATDS without Mr. Smith's prior express consent.

*COUNT TWENTY-THREE – Sabrina Gilson*

**Violation of the Fair Debt Collection Practices Act**

148.   In early 2014, CPA began calling Ms. Gilson on her cellular phone in connection with the collection of a debt.

149.   On multiple occasions, Ms. Gilson communicated her desire that CPA cease calling her.

150.   Notwithstanding these communications, CPA continued to call Ms. Gilson multiple times on her cellular phone in connection with the collection of a debt within the last twelve months.

151.   CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

152.   CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

153.   In this case, CPA policies and practices violated the FDCPA as to Ms. Gilson.

154. CPA caused Ms. Gilson emotional distress.

155. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Gilson in connection with the collection of the debt.

### COUNT TWENTY-FOUR – Sabrina Gilson

**Violation of the Fair Debt Collection Practices Act**

156. Ms. Gilson re-alleges and incorporates by reference Paragraphs 148 through 155 above as if fully set forth herein.

157. CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

### COUNT TWENTY-FIVE – Sabrina Gilson

**Violation of the Telephone Communication Protection Act**

158. Ms. Gilson re-alleges and incorporates by reference Paragraphs 148 through 155 above as if fully set forth herein.

159. Ms. Gilson was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

160. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Gilsons's cellular telephone using an ATDS without Ms. Gilson's prior express consent or after Ms. Gilson had revoked such consent.

### COUNT TWENTY-SIX – Sabrina Gilson

**Willful and Knowing Violation of the Telephone Communication Protection Act**

161. Ms. Gilson re-alleges and incorporates by reference Paragraphs 148 through 155, and Paragraph 159, above as if fully set forth herein.

162. CPA voluntarily placed telephone calls to Ms. Gilson's cellular telephone using an ATDS.

163. CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Gilson's cellular telephone using an ATDS without Ms. Gilson's prior express consent.

<u>COUNT TWENTY-SEVEN – Davon Peyton</u>

**Violation of the Fair Debt Collection Practices Act**

164. In mid 2014, CPA began calling Mr. Peyton on his cellular phone in connection with the collection of a debt.

165. One more than one occasion Mr. Peyton advised CPA that he was not the person with CPA was looking to speak and reiterated his desire that CPA cease calling him.

166. Notwithstanding these communications, CPA continued to call Mr. Peyton multiple times on his cellular phone in connection with the collection of a debt within the last twelve months.

167. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

168. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

169. In addition, CPA's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Mr. Peyton.

170. CPA unreasonably relied upon inaccurate information provided to CPA by one or more original creditors for whom CPA was attempting to collect a debt when CPA called Mr. Peyton's cellular telephone.

171. In this case, CPA policies and practices violated the FDCPA as to Mr. Peyton.

172. CPA caused Mr. Peyton emotional distress.

173. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Peyton in connection with the collection of the debt.

*COUNT TWENTY-EIGHT – Davon Peyton*

**Violation of the Fair Debt Collection Practices Act**

174. Mr. Peyton re-alleges and incorporates by reference Paragraphs 164 through 173 above as if fully set forth herein.

175. CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

*COUNT TWENTY-NINE – Davon Peyton*

**Violation of the Telephone Communication Protection Act**

176. Mr. Peyton re-alleges and incorporates by reference Paragraphs 164 through 173 above as if fully set forth herein.

177. Mr. Peyton was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

178. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Peyton's cellular telephone using an ATDS without Mr. Peyton's prior express consent or after Mr. Peyton had revoked such consent.

*COUNT THIRTY – Davon Peyton*

**Willful and Knowing Violation of the Telephone Communication Protection Act**

179. Mr. Peyton re-alleges and incorporates by reference Paragraphs 164 through 173, and Paragraph 177, above as if fully set forth herein.

180. CPA voluntarily placed telephone calls to Mr. Peyton's cellular telephone using an ATDS.

181. CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Peyton's cellular telephone using an ATDS without Mr. Peyton's prior express consent.

*COUNT THIRTY-ONE – Nicholas Ramsey*

**Violation of the Fair Debt Collection Practices Act**

182. In early 2014, CPA began calling Mr. Ramsey on his cellular phone in connection with the collection of a debt.

183. On multiple occasions, Mr. Ramsey communicated his desire that CPA cease calling him.

184. Notwithstanding these communications, CPA continued to call Mr. Ramsey multiple times on his cellular phone in connection with the collection of a debt within the last twelve months.

185. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

186. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

187. In this case, CPA policies and practices violated the FDCPA as to Mr. Ramsey

188. CPA caused Mr. Ramsey emotional distress.

189. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Ramsey in connection with the collection of the debt.

### COUNT THIRTY-TWO – Nicholas Ramsey

**Violation of the Fair Debt Collection Practices Act**

190. Mr. Ramsey re-alleges and incorporates by reference Paragraphs 182 through 189 above as if fully set forth herein.

191. CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

### COUNT THIRTY-THREE – Nicholas Ramsey

**Violation of the Telephone Communication Protection Act**

192. Mr. Ramsey re-alleges and incorporates by reference Paragraphs 182 through 189 above as if fully set forth herein.

193. Mr. Ramsey was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

194. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Ramsey's cellular telephone using an ATDS without Mr. Ramsey's prior express consent or after Mr. Ramsey had revoked such consent.

### COUNT THIRTY-FOUR – Nicholas Ramsey

**Willful and Knowing Violation of the Telephone Communication Protection Act**

195. Mr. Ramsey re-alleges and incorporates by reference Paragraphs 182 through 189, and Paragraph 193, above as if fully set forth herein.

196. CPA voluntarily placed telephone calls to Mr. Ramsey's cellular telephone using an ATDS.

*197.* CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Ramsey's cellular telephone using an ATDS without Mr. Ramsey's prior express consent.

*COUNT THIRTY-FIVE* – Shayna Kimball

**Violation of the Fair Debt Collection Practices Act**

198. In early 2014, CPA began calling Ms. Kimball on her cellular phone in connection with the collection of a debt.

199. On multiple occasions, Ms. Kimball communicated her desire that CPA cease calling her.

200. Notwithstanding these communications, CPA continued to call Ms. Kimball multiple times on her cellular phone in connection with the collection of a debt within the last twelve months.

201. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA disregards that communication as if it had not been made.

202. CPA's policy and practice is that when a consumer communicates his or her desire that CPA cease calling, but the consumer does not do so in writing, CPA does not record that request in CPA's records related to the debt CPA is seeking to collect from the consumer.

203. In this case, CPA policies and practices violated the FDCPA as to Ms. Kimball.

204. CPA caused Ms. Kimball emotional distress.

205. CPA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Kimball in connection with the collection of the debt.

<u>*COUNT THIRTY-SIX – Shayna Kimball*</u>

**Violation of the Fair Debt Collection Practices Act**

206.  Ms. Kimball re-alleges and incorporates by reference Paragraphs 198 through 205 above as if fully set forth herein.

207.  CPA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<u>*COUNT THIRTY-SEVEN – Shayna Kimball*</u>

**Violation of the Telephone Communication Protection Act**

208.  Ms. Kimball re-alleges and incorporates by reference Paragraphs 198 through 205 above as if fully set forth herein.

209.  Ms. Kimball was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

210.  CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Kimball's cellular telephone using an ATDS without Ms. Kimball's prior express consent or after Ms. Kimball had revoked such consent.

<u>*COUNT THIRTY-EIGHT – Shayna Kimball*</u>

**Willful and Knowing Violation of the Telephone Communication Protection Act**

211.  Ms. Kimball re-alleges and incorporates by reference Paragraphs 198 through 205, and Paragraph 209, above as if fully set forth herein.

212.  CPA voluntarily placed telephone calls to Ms. Kimball's cellular telephone using an ATDS.

213.  CPA willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate

occasions by each time calling Ms. Kimball's cellular telephone using an ATDS without

Ms. Kimball's prior express consent.

## JURY DEMAND

214.  Each Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

215.  Each Plaintiff prays for the following relief:

a.  Judgment against Defendant for actual damages, statutory damages, and costs and

reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

b.  An order enjoining Defendant from placing further telephone calls to each

Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

c.  Judgment against Defendant for actual damages, statutory damages, costs and

reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat.

§ 559.77 for each Florida Plaintiff.

d.  Judgment against Defendant for statutory damages pursuant to 47 U.S.C.

§ 227(b)(3) for each and every call Defendant made in violation of the TCPA.

e.  For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC, LPA

Date: October 6, 2015            By:     /s/ David M. Menditto
                                        One of Plainiffs' Attorneys

                                 David M. Menditto
                                 Illinois Bar No. 6216541
                                 1100 W. Cermak Rd., Ste. B410
                                 Chicago, IL  60608
                                 Phone: (312) 380-6110
                                 Fax: (312) 361-3509
                                 davidm@fairdebt411.com